[Cite as *Sky v. Van Der Westhuizen*, 2019-Ohio-1960.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ANASTASIA SKY, M.D. | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2018 CA 00127 |
| HILDE VAN DER WESTHUIZEN | |
| Defendant-Appellant | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Case No. 2016 CV 01676 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | May 20, 2019 |
| APPEARANCES: | |

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| ADAM C. SHERMAN<br>DANIEL E. SHUEY<br>JESSICA K. CUNNING<br>ANDREW P. GURAN<br>VORYS, SATER, SEYMOUR<br>   and PEASE LLP<br>106 South Main Street, Suite 110<br>Akron, Ohio 44308 | NATALIE F. GRUBB<br>MARK E. OWENS<br>GRUBB and ASSOCIATES LPA<br>437 West Lafayette Road<br>Suite 260-A<br>Medina, Ohio 44256 |

*Wise, J.*

**{¶1}**    Appellant Hilde Van Der Westhuizen appeals from the August 1, 2018, judgment entered in the Stark County Common Pleas Court awarding damages to Appellee Anastasia Sky, M.D. on her Complaint following a grant of default judgment.

<u>STATEMENT OF THE FACTS</u>

**{¶2}**    The relevant facts and procedural history are as follows:

**{¶3}**    Appellee Anastasia Sky, M.D. is a psychotherapist, located in Dundas, Ontario, Canada.  She has been practicing for approximately twenty-four years. (Vol. I at 13-17, 125). Dr. Sky is also a cat breeder of Birman cats and owns Skyhaven Birman Cattery. In addition to breeding, Dr. Sky also exhibits her cats at cat shows and has won awards, including the International Best of Breed Birman Champion Award during the 2014-2015 show season.  Dr. Sky's cats and her cattery are registered with the Cat Fanciers Association, which is headquartered in Alliance, Stark County, Ohio. Appellant also shows her cats within the CFA, regularly traveling to Ohio to exhibit her cats at CFA shows, sell cats to other breeders, participate in CFA sanctioned cat shows and attend CFA Regional Banquets, where she has also received awards.

**{¶4}**    Appellant Hilde Van Der Westhuizen is also a member of the Cat Fanciers Association. Appellant also registers her cats with the CFA and shows her cats within the CFA. (Vol. II at 27-28). Appellant has also owned a CFA registered Birman Cattery known as Kyatwo Birmans since 2004, and has been breeding cats for approximately twenty-five years. (Vol. II at 99-100).

**{¶5}** Appellant Van Der Westhuizen and Appellee Sky became friends after meeting at a cat show in 2013. (Vol. II at 29-31). In February, 2014, Appellant met and trained two of Dr. Sky's cattery employees, Mike and Cindy Gutcher. (Vol. II at 115).

**{¶6}** Going into the 2015-2016 season, Appellee Sky's and Appellant Van Der Westhuizen's cats were ranked number one and number two, with the season concluding on April 30, 2016. (Vol. II at 122-123).

**{¶7}** In March of 2016, an e-mail purporting to be from the Gutchers, Appellee Sky's former cattery workers, was sent to Linda Berg at the CFA alleging, among other things, that Dr. Sky's cats were being kept in deplorable conditions, and that she treated them cruelly and inhumanely. (Vol. I at 41, 95). Ms. Berg runs the CFA Breeder Assistance and Breeder Rescue Program and is also the CFA's contact for animal welfare issues. (Vol. II at 123). Similar e-mails were also sent to others in the cat breeding community, including CFA judges and photographers. (Vol. I at 93-96). Ohio residents Ruthann Cecela and Curt Gabbard were recipients of such e-mails. *Id.*

**{¶8}** On March 8, 2016, another e-mail was sent the CFA purporting to be from "Lisa Blackwells" wherein the author of the e-mail claimed to have purchased a kitten from Appellee in December, 2015, which had to be euthanized due to illness. The e-mail also alleged that Appellee kept over 20 kittens and 35 cats in wire cages. This e-mail was also sent to CFA judge Jeri Zotolli. Ms. Zotolli was often involved in judging the cats belonging to Appellant and Appellee during the time the two were in close competition. (Vol. I at 62-63).

**{¶9}** Additional e-mails were sent to the CFA from fake identities. On of these e-mails was received by Karen Lane, the CFA Birman Breed Council Secretary, who stated

that e-mails were "pretty demeaning towards Dr. Sky about her… her cats and her cattery." (Vol. IV at 16-26, 394).

{¶10} Dr. Sky claims that as a result of these false e-mails, her reputation as a cat breeder was damaged and she suffered monetarily.

{¶11} During this same time period, multiple false reviews appeared in RateMDs.com critical of Dr. Sky. One of these ratings, posted on December 14, 2015, stated that Dr. Sky "is nuts … a crazy cat lady …Close to 50 cats in her home. Reeks like fecies [sic] and is actually quite sad seeing them all caged up and lonely." Another review, posted on March 11, 2016, read "She is a crazy cat lady … Our session was interrupted 4 times as she had to deal with 'cattery issues.' I am shocked my dr referred me to this nut case. Will never go back."  A review posted in July 3, 2016, claimed "This dr is the worst EVER! … Her medical license was revoked in Boston due to drug abuse, she has no privileges in Canada as a result. Stay away!"

{¶12} As a result of the false reviews about her medical practice, Appellee Sky claims that she lost income, lost referrals from fellow physicians, and had to counsel patients about the allegations made in the reviews about her. (Vol. I at 126-127, 130).

{¶13} Additionally, Dr. Sky alleges as a result of the e-mails and false reviews, she had to incur costs to help her salvage her reputation including hiring legal professionals to assist in her addressing the defamatory acts, hiring someone to address and send e-mails in response, hiring a company to help with managing the cattery and its workers, paying the CFA for an inspection of her cattery, as well as hiring legal counsel to be present at the time of said inspection, and purchasing a membership to

RateMDs.com to mitigate the damaging reviews. (Vol. I at 75, 82-85, 96, 103, 116; Vol. III at 184; Vol. IV at 256).

{¶14} Dr. Sky further alleges that she suffered mentally, emotionally and physically following these events. (Vol. I at 145-146). Dr. Sky saw a therapist for ten sessions to help her cope with her emotional and mental state. (Vol. I at 146-147).

{¶15} On July 21, 2016, Appellee Anastasia Sky, M.D. filed a Complaint against an unknown Appellant who directed defamatory correspondence to, among others, the Cat Fanciers Association (CFA), in Stark County, Ohio. From July to October 2016, Dr. Sky issued subpoenas to determine the identification of the perpetrator. Those subpoena responses identified Hilde Van Der Westhuizen as the author of the correspondence.

{¶16} On October 27, 2016, Dr. Sky filed her First Amended Complaint, which named Appellant Hilde Van Der Westhuizen and included six counts: (1) defamation per se, (2) defamation, (3) tortious interference with existing economic and/or business relationships, (4) tortious interference with prospective economic and/or business relationships, (5) violation of the Ohio Deceptive Trade Practices Act, R.C. § 4165.02(10) ("ODTPA"), and (6) intentional infliction of emotional distress.

{¶17} On November 18, 2016, Paul Godfread identified himself as Appellant's counsel, and Dr. Sky's attorneys provided him with a copy of the First Amended Complaint.

{¶18} On January 20, 2017, service by ordinary mail was completed under Civil Rule 4.6(D).

{¶19} Appellant failed to file an Answer by the answer date of February 18, 2017.

{¶20} On March 9, 2017, Appellee filed a Motion for Default Judgment.

**{¶21}** On March 9, 2017, Appellant filed her Brief in Opposition to Motion for Default Judgment. Appellant also filed an Affidavit of Defendant Hilde Van Der Westhuizen on the same date.

**{¶22}** On March 15, 2017, Appellee Sky filed a Brief in Support of her Motion for Default Judgment.

**{¶23}** On March 15, 2017, Appellant filed a motion for leave to file a motion to dismiss for lack of personal jurisdiction *Instanter*.

**{¶24}** On March 15, 2017, Appellee Sky filed her Brief in Opposition to Defendant Hilde Van Der Westhuizen's Motion for Leave to File Motion to Dismiss for Lack of Personal Jurisdiction *Instanter*.

**{¶25}** On March 23, 2017, Appellant filed a Reply Brief in Support of Motion for Leave to File Motion to Dismiss for Lack of Personal Jurisdiction *Instanter*.

**{¶26}** By Judgment Entry filed March 29, 2017, the trial court granted default judgment and found the motion for leave moot. The trial court also set a damages hearing for July 7, 2017.

**{¶27}** On April 13, 2017, Appellant filed a Motion to Vacate or Set Aside Default Judgment as Void *Ab Initio*, which the trial court denied on June 29, 2017.

**{¶28}** On April 25, 2017, Appellee Sky filed a Memorandum in Opposition to Defendant Hilde Van Der Westhuizen's Motion to Vacate or Set Aside Default Judgment as Void *Ab Initio*. Attached to said Memorandum were Affidavits of Dr. Sky and Attorney Adam C. Sherman.

**{¶29}** The day before the July 7th damages hearing, Appellant filed a notice of appeal, which this Court dismissed for lack of jurisdiction.

{¶30} Appellant next filed a motion to certify the judgment entries, which was denied on August 31, 2017.

{¶31} On November 3, 2017, a damages hearing commenced. The hearing was extended an additional five (5) days over the next five (5) months: December 13, 2017, February 28, 2018, March 1, 2018, and April 5-6, 2018. (Collectively "Damages Hearing.").

{¶32} On August 1, 2018, the trial court entered its judgment awarding Dr. Sky damages on Counts One, Five, Six, and, in part, on Count Two; and certain permanent injunctive relief.

{¶33} Appellant Van Der Westhuizen now appeals, raising the following errors for review:

ASSIGNMENTS OF ERROR

{¶34} "I. THE TRIAL COURT ERRED IN DENYING RELIEF TO APPELLANT FROM THE DEFAULT JUDGMENT BECAUSE IT LACKED PERSONAL JURISDICTION.

{¶35} "II. THE TRIAL COURT'S EVIDENTIARY FINDINGS IN SUPPORT OF ITS AWARD OF COMPENSATORY DAMAGES ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶36} "III. THE TRIAL COURT'S EVIDENTIARY FINDINGS IN SUPPORT OF ITS AWARD OF VORYS' ATTORNEY'S FEES ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶37} "IV. THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING THE CANADIAN FIRMS' FEES.

**{¶38}** "V. THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PUNITIVE DAMAGES.

**{¶39}** "VI. THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING DAMAGES UNDER THE OHIO DECEPTIVE TRADE PRACTICES ACT.

**{¶40}** "VII. THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING INJUNCTIVE RELIEF."

**I.**

**{¶41}** In her first assignment of error, Appellant argues the trial court erred in finding that it had personal jurisdiction over her in this matter. We disagree.

**{¶42}** Appellant herein filed a motion to vacate or set aside the trial court's judgment entry granting default in this case.

**{¶43}** A trial court's determination of whether personal jurisdiction over a party exists is a question of law, and appellate courts review questions of law under a de novo standard of review. *Information Leasing Corp. v. Jaskot,* 151 Ohio App.3d 546, 2003-Ohio-566, 784 N.E.2d 1192 (1st Dist.).

**{¶44}** Generally, a court must undertake a two-step process in determining whether a state court has personal jurisdiction over a non-resident defendant. *Fraley v. Estate of Oeding,* 138 Ohio St.3d 250, 2014-Ohio-452, 6 N.E.3d 9, ¶ 12. The court must first consider whether Ohio's long-arm statute, R.C. 2307.382, or the civil rules confer jurisdiction. *Id.* If they do, the court must then consider whether asserting jurisdiction over the non-resident defendant would deprive the defendant of the right to due process under the law, as guaranteed by the Fourteenth Amendment to the U.S. Constitution. *Id.* To satisfy due process, the defendant must maintain "certain minimum contacts with the

state so that the suit does not offend traditional notions of fair play and substantial justice."

*Clark v. Connor,* 82 Ohio St.3d 309, 314, 695 N.E.2d 751 (1998).

**{¶45}** However, a person or entity may consent to personal jurisdiction, thereby waiving her due process rights. *Kennecorp Mrge. Brokers, Inc., v. Country Club Convalescent Hosp., Inc.,* 66 Ohio St.3d 173, 175–176, 610 N.E.2d 987 (1993).

**{¶46}** Ohio's long-arm statute in R.C. §2307.382 states, in pertinent part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

* * *

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.

(8) Having an interest in, using, or possessing real property in this state[.]

**{¶47}** Civ.R. 4.3 governs when service of process may be made outside this state. The language in Civ.R. 4.3(A)(1)-(4) is similar to the language in R.C. §2307.382(A)(1)-

(4), and the language in Civ.R. 4.3(A)(10) is similar to the language in R.C. §2307.382(A)(7).

**{¶48}** In its June 29, 2017, Judgment Entry, the trial court specifically found:

Plaintiff has complied with all the requirements of the Ohio Rules of Civil Procedure regarding service and has perfected service upon Defendant Van Der Westhuizen. Furthermore, the Court finds that it has jurisdiction in this matter and that Plaintiff has satisfied the requirements of Ohio's Long Arm Statute as set forth in R.C. 2307.382 and the Court finds that Defendant has sufficient minimum contacts in Ohio to find that this Court has personal jurisdiction over her."

**{¶49}** We agree with the trial court and find Appellant caused tortious injury in the state of Ohio. Appellant was the author of the false and defamatory e-mails which were sent to officials at the Cat Fanciers Association, an Ohio organization located in Alliance, Ohio, as well as other Ohio residents in the cat breeding circle. Further, Appellant caused injury to Appellee's reputation as a cat breeder in Ohio, and the defamation cause of action Appellee brought against her arose from that injury.

**{¶50}** Additionally, Appellant argues, even if Ohio's long arm statute confers jurisdiction over her, the trial court erred in denying her motion to vacate as Appellee failed to demonstrate that jurisdiction over her did not violate her right to due process.

**{¶51}** The Due Process Clause of the Fourteenth Amendment mandates that a court exercise jurisdiction only if the defendant has sufficient minimum contacts with the state such that summoning the party to Ohio would not offend the "'traditional notions of fair play and substantial justice." *Internat'l. Shoe Co. v. Washington,* 326 U.S. 310, 316,

66 S.Ct. 154, 90 L.Ed. 95 (1945). In determining whether a defendant has the necessary minimum contacts with the forum, a court should consider " 'the number of contacts, the nature and quality of the contacts, the source and connection between the cause of action and the contacts, the interest of the forum state [,] and the convenience of the parties.' " *Natl. City Bank v. Yevu,* 178 Ohio App.3d 382, 2008–Ohio–4715, 898 N.E.2d 52, ¶ 16 (8th Dist.), quoting *M & W Contrs., Inc. v. Arch Mineral Corp.* 335 F.Supp. 972 (S.D.Ohio 1971). The constitutional touchstone is whether the nonresident defendant purposely established contacts in the forum state such that the defendant should reasonably anticipate being hauled into court in that state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

{¶52} We find Appellant purposefully availed herself of the privilege of conducting business and engaging in activities in Ohio. Appellant is a member of the CFA, an Ohio organization. Appellant has been a member of the CFA since 2004, advertises her cattery as registered with the CFA, and registers all of her kittens with CFA. Appellant also attends and pays registration fees for CFA cat shows, including shows held in Ohio.

{¶53} Upon review of the pleadings, we find Appellee made the prima facie showing of jurisdiction over Appellant. R.C. §2307.382 and Civ.R. 4.3 confer personal jurisdiction over Appellant and the assertion of personal jurisdiction over Appellant is consistent with "traditional notions of fair play and substantial justice" and comports with the Due Process Clause of the Fourteenth Amendment. It cannot be said from the face of the complaint that Appellant did not purposely establish contacts in Ohio such that she would not reasonably anticipate being hauled into an Ohio court.

**{¶54}** Appellant's first assignment of error is overruled.

## II.

**{¶55}** In her second assignment of error Appellant argues that the trial court's award of compensatory damages was not supported by the manifest weight of the evidence. We disagree.

**{¶56}** In the case *sub judice*, default judgment was granted against Appellant on all of Appellee's claims as set forth in her Complaint: (1) defamation *per se*, (2) defamation, (3) tortious interference with existing economic and/or business relationships, (5) violation of the ODTPA, and (6) intentional infliction of emotional distress. Following six days of testimony and evidence at the damages hearings, the trial court granted damages to Dr. Sky on Counts 1, 2, 5 and 6.

Defamation – Counts 1 and 2

**{¶57}** Actionable defamation falls into one of two categories: defamation *per se* or defamation *per quod. Woods v. Capital Univ.,* 10th Dist. No. 09AP–166, 2009-Ohio-5672. Defamation *per se* occurs when a statement, on its face, is defamatory. *Id.* at ¶ 29. As relevant herein, defamation is *per se* if the words tend to injure a person in their trade or occupation. *Id.* at ¶ 28, citing *Schoedler v. Motometer Gauge & Equip. Corp.,* 134 Ohio St. 78, 84, 15 N.E.2d 958 (1938); *Bigelow v. Brumley,* 138 Ohio St. 574, 592, 37 N.E.2d 584 (1941). Whether an unambiguous statement constitutes defamation per se is a question of law. *Id.*

**{¶58}** If a statement is defamatory *per se*, a plaintiff " 'may maintain an action for [defamation] and recover damages, without pleading or proving special damages.' " *Woods* at ¶ 30, quoting *Becker v. Toulmin,* 165 Ohio St. 549, 553, 138 N.E.2d 391 (1956).

When defamation is *per se*, "[p]roof of the defamation itself establishe[s] the existence of some damages." *Gosden v. Louis,* 116 Ohio App.3d 195, 208, 687 N.E.2d 481 (9th Dist.1996). When a statement is defamatory *per quod*, a plaintiff must plead and prove special damages. *Woods* at ¶ 30, citing *Becker* at 557, 138 N.E.2d 391.

**{¶59}** "Special damages are those direct financial losses resulting from the plaintiff's impaired reputation." *Id.,* citing *Wheeler v. Yocum,* 10th Dist. No. 85AP–828, 1986 WL 3711 (Mar. 25, 1986). *See also Peters v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 14AP–1048, 2015-Ohio-2668, 2015 WL 3964204.

**{¶60}** "In Ohio, a plaintiff must prove either: (1) ordinary negligence and actual injury, in which case he can receive damages for the actual harm inflicted; or (2) actual malice, in which case he is entitled to presumed damages." *Woods* at ¶ 35.

Defamation <em>Per Se</em> – Presumed Damages

**{¶61}** Upon review, we find that testimony and evidence was presented to support presumed damages to Dr. Sky's reputation as both a cat breeder/exhibitor and a doctor. Dr. Sky testified that after the defamatory emails were sent by Appellee, Dr. Sky was shunned in the breeding community and her cats failed to place at cat shows. (Vol. I at 117, Vol. III at 216-217). She also suffered damages in the form of lost revenue due to a decrease in sales of kittens. (Vol. IV at 269-270).  Additionally, she is no longer asked for interviews as a Birman cat expert. (Vol. I at 52-53).

**{¶62}** Dr. Sky also testified that following the false reviews posted in RateMDs.com, her patients became concerned and required counseling and assurances. (Vol. I at 43-44, 57, 127).  She also lost patients as a result of the damaging reviews. (Vol.

I at 127). Additionally, she received fewer physician referrals during the time period that the reviews were visible online. (Vol. I at 126).

**{¶63}** Evidence was also presented to support presumed damages on her claims for emotional distress stemming from humiliation, mental anguish and suffering. Testimony was presented from Dr. Sky, as well as others, regarding the changes she underwent following the defamation such as changes in her appearance, her mood and her mental/emotional state. (Vol. II at 164-169; Vol. IV 341-342, 349, 360-361). Evidence was also presented that Dr. Sky sought therapy for her emotional distress. (Vol. I at 146-147).

Defamation <em>per Quod</em>- Special Damages

**{¶64}** In support of her claim for financial losses resulting from damage to her reputation, Dr. Sky testified that in addition to evidence stated above, the sale of kittens was down from 68 kittens sold in 2015 to 27 kittens sold in 2017. (Vol. IV at 269-270).

**{¶65}** Dr. Sky further testified that she lost income in her medical practice as a result of damage to her reputation as a doctor. She testified that in addition to the damages listed above, she lost income in the amount of $12,765 CAD, lost future earning capacity in the amount of $26,178.98 CA for 2016 and 2017, and lost ten (10) patients. (Vol. I at 131-133, 137-138, 140-141; Vol. IV at 251, 254-255).

**{¶66}** In support of her claim for damages for emotional distress, Dr. Sky testified as to her personal humiliation and mental suffering in regard to having to respond to the defamatory e-mails, having to undergo inspections of her cattery, being shunned by judges at cat shows, and no longer being pursued for publications. She also testified that her hair fell out, she lost sleep, and had to seek therapy. Testimony of Ms. Ryan, Ms.

Garner and Dr. Wittenrich was also presented in support of these emotional distress damages.

Count 6 - Intentional Infliction of Emotional Distress

**{¶67}** Dr. Sky testified that as a result of the defamation, she suffered severe emotional distress and that she was living in a "crisis" situation which required her to seek treatment with a therapist. (Vol. I at 92-94, 146-147). Ms. Ryan also testified that during this time she was concerned about Dr. Sky being completely distraught and worried about her "losing it." (Vol. IV at 349).

**{¶68}** In light of the testimony provided at the damages hearing, we find that the record contains competent, credible evidence to support the trial court's damage awards.

**{¶69}** Appellant's second assignment of error is overruled.

**III.**

**{¶70}** In her third assignment of error Appellant argues that the trial court's award of attorney fees was against the manifest weight of the evidence. We disagree.

**{¶71}** An award of attorneys' fees is within the sound discretion of the trial court. *Rand v. Rand,* 18 Ohio St.3d 356, 369, 481 N.E.2d 609 (1985). In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶72}** In *Bittner v. Tri–County Toyota,* 58 Ohio St.3d 143, 569 N.E.2d 464 (1991), the Ohio Supreme Court held that the starting point for the determination of a reasonable amount of fees is the number of hours spent by the attorney multiplied by a reasonable hourly rate. *Id.* "This calculation provides an objective basis on which to make an initial

estimate of the value of a lawyer's services." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939 (1983).

**{¶73}** The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. *Canton v. Irwin,* 5th Dist. Stark No. 2011 CA00029, 2012–Ohio–344. To establish the number of hours reasonably expended, the party requesting the fees should submit evidence to support the hours worked. *Hensley,* 461 U.S. at 433. A reasonable hourly rate is "the prevailing market rate in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Once the trial court calculates the "lodestar figure," it can modify the calculation by applying the factors listed in Rule 1.5 of the Ohio Rules of Professional Conduct (formerly DR 2–106(B)). *Landmark Disposal Ltd. v. Byler Flea Market,* 5th Dist. Stark No. 2005CA00294, 2006–Ohio–3935. These factors are: the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent. *Canton v. Irwin,* 5th Dist. Stark No. 2011 CA00029, 2012–Ohio–344. "All factors may not be applicable in all cases and the trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation." *Id.,* citing *Bittner v. Tri–County Toyota,* 58 Ohio St.3d 143, 569 N.E.2d 464 (1991). The "trial court maintains discretion to make the determination as to what [attorney] fee award is reasonable in light of all the facts and

circumstances of the case." *Mauger v. Inner Circle Condominium Owners Assn.,* 9th Dist. No. 10CA0046–M, 2011–Ohio at paragraph 26.

**{¶74}** Here, Atty. Sherman from Vorys, Sater, Seymour and Pease testified as to the reasonableness of their request for attorney fees in the amount of $146,265.34 for legal services rendered between July, 2016, and February, 2018, and an additional $10,000 for Attys. Sherman and Cunning to attend the damages hearing on April 5 and April 6, 2018. The trial court also heard testimony from Atty. Sherman as to the high level of skill necessary to handle internet defamation claims and that there are only a couple of law firms which regularly handle such cases. (Vol. I at 12, 15, 36-38). Atty. Sherman also explained to the court that the Vorys firm reduced Dr. Sky's bills by almost half. (Vol. I at 33).

**{¶75}** Appellant challenged this amount by calling Atty. Robert E. Soles as an expert witness, who argued that Vorys' hourly rates of $435-$480/hour were too high for this area, and that an hourly rate of $250-$300 was reasonable, calculating that Vorys' attorney fees should be $96,380.

**{¶76}** The trial court reduced the attorney fees and awarded $120,000 to the law firm of Vorys, Sater, Seymour and Pease for legal services provided to Appellee and also awarded $10,000 to Atty. Sherman and Atty. Cunning for the attendance at the damages hearing held on April 5-6, 2018.

**{¶77}** In determining the amount of the attorney fee award, the trial court explained that it took into consideration that this case "became far more complicated" than a traditional "damages case" and that counsel's representation was "exemplary, thorough and detailed." (Judgment Entry at 39).

**{¶78}** Based on the testimony and evidence presented to the trial court, we find that the record contains competent, credible evidence to support the trial court's damages award.

**{¶79}** Appellant's third assignment of error is overruled.

## IV.

**{¶80}** In her fourth assignment of error Appellant argues that the trial court erred in awarding fees to the Canadian firm. We disagree.

**{¶81}** The trial court awarded damages to Appellee in connection with her retention of the Gardiner Roberts, Borden Ladner Gervais, Spero & Associates, and also to Career Compass Canada.

**{¶82}** With regard to the legal services provided to Appellee by Gardiner Roberts, Borden Ladner Gervais, and Spero & Associates, evidence was provided that such fees were incurred in an effort to both repair and stop further damage to her careers as both a cat breeder and a doctor. (Vol. I at 82-83). Evidence of payment was provided to the court in the form of checks drawn on Appellee's bank account.

**{¶83}** Testimony and evidence was also provided to the court as to the assistance provided to Appellee by Career Compass Canada for day to day cattery operations while Appellee dealt with problems caused by the defamation. (Vol. I at 116-121). Appellee also provided copies of the checks as proof of payment.

**{¶84}** Additionally, the trial court awarded damages for the ten psychotherapy sessions Appellee underwent for treatment to cope with the defamation.

**{¶85}** Appellee testified as to the costs she incurred hiring the above firms and introduced the invoices and copies of the cancelled checks as exhibits in support. While

Appellant argues that the invoices and copies of cancelled checks introduced as exhibits are hearsay, no such objection was made during the damages hearing. The rule in Ohio is that if a party fails to raise a hearsay objection at a time when the documents could be cured, he waives that error on appeal. *Amerifirst Sav. Bank of Xenia v. Krug* (1999), 136 Ohio App.3d 468, 481, 737 N.E.2d 68, 76-77. Regardless, we find these costs were properly considered as documentary evidence of costs incurred by Appellee as a result of the defamation in this matter.

**{¶86}** Appellant's fourth assignment of error is overruled.

**V.**

**{¶87}** In her fifth assignment of error Appellant argues that the trial court abused its discretion in awarding punitive damages.

**{¶88}** Initially, we note that the trial court awarded compensatory damages to Appellee based on Appellant's defamatory actions. The trial court then made a determination that punitive damages were appropriate in this matter.

**{¶89}** The purpose of punitive damages is not to compensate the plaintiff, but to punish and deter the defendant's conduct. *Dick v. Tab Tool & Die Co., Inc.,* 5th Dist. No. 2008–CA–0013, 2008–Ohio–5145, 2008 WL 4444765, ¶ 33 citing *Derringer v. Anthem Blue Cross & Blue Shield,* 98 Ohio St.3d 77, 2002–Ohio–7113, 781 N.E.2d 121. Ohio law provides that an award of punitive damages is available only upon a finding of actual malice. *Berge v. Columbus Community Cable Access,* 136 Ohio App.3d 281, 316, 736 N.E.2d 517, (10th Dist.1999).

**{¶90}** Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of

revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. *Preston v. Murty,* 32 Ohio St.3d 334, 335, 512 N.E.2d 1174, (1987), syllabus. "Since punitive damages are assessed for punishment and not compensation, a positive element of conscious wrongdoing is always required." *Id.*

**{¶91}** The law of Ohio is clear on when punitive damages may be awarded:

[P]unitive or exemplary damages are not recoverable from a defendant in question in a tort action unless *both* of the following apply:

(1) The actions or omissions of that defendant demonstrate malice ***, or that defendant as principal or master authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate; [and]

(2) The plaintiff in question has adduced proof of actual damages that resulted from actions or omissions as described in division (B)(1) of this section. (Emphasis added.) R.C. §2315.21(B).

**{¶92}** Here, default judgment was entered on Appellee's Amended Complaint resulting in an admission by Appellant that her actions were "malicious, reckless, wanton, willful and gross and were characterized by hatred, ill will, a spirit of revenge, or a conscious disregard for the rights of Plaintiff." (Am. Complaint at ¶¶58, 65, 78-80, 84-86). *See Dopeker v. Willo Sec., Inc.* 5th Dist. Stark No. 2007 CA 00185, 2008-Ohio-2008, ¶46).

**{¶93}** On review to determine whether a punitive damage award is excessive, the award will not be overturned unless it bears no rational relationship or is grossly

disproportionate to the award of compensatory damages. *Shore, Shirley & Co. v. Kelley* (1988), 40 Ohio App.3d 10, 16, 531 N.E.2d 333.

**{¶94}** Here, in addition to the admission through default, the trial court heard testimony and was provided evidence which established Appellant acted with malice in this case. The nature of the defamatory statements contained in the e-mails, the recipients such e-mails were directed to, and the timing of same happening during the spring of 2016 when Appellant and Appellee were both aggressively pursuing the highest CFA award, all support a finding of actual malice and support an award of punitive damages.

**{¶95}** Appellant's fifth assignment of error is overruled.

**VI.**

**{¶96}** In her sixth assignment of error Appellant argues that the trial court abused its discretion in awarding damages under the Ohio Deceptive Trade Practices Act. We disagree.

**{¶97}** The Ohio Deceptive Trade Practices Act is codified in R.C. §4165.02, and, as pertinent to the claims herein, states that:

(A) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:

* * *

(10) Disparages the goods, services, or business of another by false representation of fact.

{¶98} Under the DTPA, R.C. §4165.02 and R.C. §4165.03 provide two types of action: (1) an action where a person is likely to be damaged and seeks injunctive relief and (2) an action where a person has been injured and seeks damages. Appellant herein seeks both injunctive relief and damages. Further, a key provision in the DTPA allows an award of attorney fees for either of the two types of action. *See* R.C. §4165.03(B) (" * * * in either type of civil action * * * [a]n award of attorney fees may be assessed against a defendant if the court finds that the defendant has willfully engaged in a trade practice listed in [R.C. §4165.02(A)] knowing it to be deceptive.").

{¶99} Here, the trial court in its judgment entry, found that Appellant made numerous false representations of fact in regard to Dr. Sky's professional medical services and her cattery, kittens and cats. (Judgment Entry at 60). The court then goes on to spell out those false representations, which again are admitted by virtue of the default judgment in this case.  The court then, based on those false statements, concluded that Dr. Sky suffered actual damages as a result of said false representations. (Judgment Entry at 62).

{¶100} Upon review, we find no abuse of discretion in the trial court's award based on its detailed findings set forth in its judgment entry.

{¶101} Appellant's sixth assignment of error is overruled.

**VII.**

{¶102} In her seventh assignment of error Appellant argues the trial court abused its discretion in awarding injunctive relief. We disagree.

{¶103} The trial court herein granted permanent injunctive relief to Appellee requiring removal of any online posts/reviews or other statements concerning Dr. Sky,

including statements on social media and RateMDs.com and preventing any further such acts by Appellant.

{¶104} A party seeking a permanent injunction must demonstrate by clear and convincing evidence that they are entitled to relief under applicable statutory law, that an injunction is necessary to prevent irreparable harm, and that no adequate remedy at law exists. *Proctor & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 268, 747 N.E.2d 268 (5th Dist. 2000).

{¶105} The standard of review for this Court regarding the granting of an injunction by a trial court is whether the trial court abused its discretion. *Perkins v. Quaker City,* 165 Ohio St. 120, 125, 133 N.E.2d 595 (1956)

{¶106} In granting the permanent injunction, the trial court found same to be necessary because testimony was presented that the CFA has not made any type of statement discrediting the defamatory e-mails and statements and clearing Dr. Sky's name.  The court therefore found that her reputation continues to be damaged. (Judgment Entry at 68).

{¶107} Upon review, we find no abuse of discretion by the trial court in granting a permanent injunction herein. As stated by the trial court, damage to one's reputation cannot be adequately compensated monetarily, nor put her in the same position she was in prior to the defamation. We find that enjoining Appellant from any future acts of defamatory publications and harassment and ordering the removal of the defamatory statements on RateMDS.com were necessary in this case.

{¶108} Appellant's seventh assignment of error is overruled.

{¶109} For the reasons stated in the foregoing opinion, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Wise, J.

Gwin, P. J., and

Delaney, J., concur.

JWW/d 0510