[Cite as *Ackison v. Gergley*, 2022-Ohio-3490.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| MELISSA ACKISON | JUDGES:<br>Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case Nos. 2021 CA 00087 &<br>2021 CA 00089 |
| JOSEPH GERGLEY | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDINGS:     Appeal from the Licking County Court of Common Pleas, Case No. 19 CV 1082


JUDGMENT:     Affirmed in part; Reversed in part; and Remanded


DATE OF JUDGMENT ENTRY:     September 29, 2022


APPEARANCES:


For Plaintiff-Appellee

J.C. RATLIFF
JEFF RATLIFF
ROCKY RATLIFF
Ratliff Law Office
200 West Center Street
Marion, Ohio 43302

For Defendant-Appellant

THOMAS SPYKER
Reminger Co., LPA
200 Civic Drive – Suite #800
Columbus, Ohio 43215

*Hoffman, J.*

**{¶1}** In Licking App. No. 21CA00087, Joseph Gergley ("Gergley") appeals the October 12, 2021 Judgment Entry entered by the Licking County Court of Common Pleas, which granted plaintiff-appellee Melissa Ackison's motion for directed verdict on Gergley's counterclaims and dismissed his case.

**{¶2}** In Licking App. No. 21CA0089, plaintiff-appellant Melissa Ackison ("Ackison") appeals the following rulings entered by the Licking County Court of Common Pleas: the June 2, 2021 Decision and Order Granting Defendant's Motion for Summary Judgment, the June 3, 2021 Nunc Pro Tunc Decision and Order Granting Defendant's Motion for Summary Judgment, July 1, 2021 Judgment Entry, and the February 2, 2021 Order Granting Defendant's Motion for Fees and Costs.

STATEMENT OF THE FACTS AND CASE

**{¶3}** Gergley owns and operates a small political consulting firm, which specializes in polling. In early 2018, Ackison hired Gergley to provide services for her United States Senate campaign. Ackison retained Gergley's services through the completion of her campaign, which ended when she was defeated in the primary. After the campaign, Gergley and Ackison discussed working together on other ventures. The parties dispute the nature of the business relationship and who approached whom. Gergley and Ackison had a falling out in July or August, 2018. The parties had no further communications with each other after that time.

**{¶4}** On October 14, 2019, Ackison filed a Complaint against Gergley, asserting causes of action for defamation, defamation by innuendo, slander, slander per se, libel, libel per se, and false light invasion of privacy. Gergley filed an answer and counterclaim on December 20, 2019, alleging causes of action for defamation, false light, malicious

prosecution, and abuse of process.  Ackison filed an answer to Gergley's counterclaim on January 17, 2020.

{¶5}    Gergley conducted a deposition of Ackison on August 13, 2020, and filed a motion for summary judgment on December 15, 2020.   Therein, Gergley argued Ackison's complaint fails as a matter of law because 1) the statements made by Gergley upon which Ackison bases her claims were opinion speech protected by Section 11, Article I of the Ohio Constitution; 2) Ackison was unable to identify any false statements made by Gergley; 3) Ackison was unable to establish Gergley made false statements; and 4) Ackison was unable to prove Gergley published any false statements with actual malice.  Ackison filed a Memorandum in Opposition to Summary Judgment on January 5, 2021.

{¶6}    After Ackison failed to respond to interrogatories and produce documents, Gergley filed a Motion to Compel and for Fees and Costs on January 15, 2021. The trial court granted Gergley's motion to compel via Order filed January 20, 2021.  The trial court scheduled an evidentiary hearing on Gergley's request for fees and costs for January 27, 2021.  Following the hearing, the trial court awarded Gergley $912.50, for fees and costs associated with the filing of the motion to compel.

{¶7}    Via Decision and Order filed June 2, 2021, the trial court granted Gergley's motion for summary judgment.  The trial court issued a nunc pro tunc decision and order on June 3, 2021, to remove the final, appealable order language.  Ackison filed a motion for reconsideration on June 7, 2021, which the trial court denied via Judgment Entry filed July 1, 2021.

**{¶8}**  Gergley's deposition was conducted on August 20, 2021, and the transcript of such was filed October 5, 2021.  The jury trial on Gergley's counterclaims commenced on October 7, 2021.

**{¶9}**  At trial, Attorney Thomas Spyker, counsel for Gergley, called Ackison on cross-examination.  Ackison testified she hired Gergley to perform certain services for her 2018 campaign for United States Senate.   Ackison noted Gergely worked for three months at the end of the campaign during which time she found him credible and trustworthy. However, after the campaign ended and their relationship progressed, she grew "very uncomfortable with him."  Trial Transcript, Vol. I, at 121.  In a text message sent on June 11, 2018, following the 2018 primary election, Ackison told Gergley she had given a reference for him and "I told him you were completely trustworthy and there's nobody that I would trust to run anything for me other than you."  *Id.* at 123-124.  Ackison acknowledged she gave a positive reference for Gergley, but added she only did so at Gergley's request.

**{¶10}**  When asked if she told people Gergley "gave drugs and alcohol to little kids," Ackison responded, "That he gave drugs and alcohol to little kids, minors.  I'm a mom of four boys.  Anybody underage is a minor to me, kid, little kid."  Tr. at 128-129.

**{¶11}**  The testimony continued:

> Q. Okay, But, you specifically used the term "little kids," correct?
>
> A. Well, yeah.  I mean, they were teenage children.  That's little kids.
>
> Q. Okay.  Do you know whether or not the person was a teenage child or a 20-year old?

A. I do.  I actually know one of the relatives of one of the young woman [sic] who was so inebriated that she couldn't walk the night that he was in – you know, fined or ticketed or plead guilty to buying the alcohol for them.

\* \* \*

Q. Okay.  She's not a child though, right?

A. Well, you are a child if you're – if you're underage, you're a child.

Q. Okay.  You told people that [Gergley] gave woman [sic] date rape drugs and bragged about it, correct?

A. Yes.

Q. Okay.  You have no actual knowledge as to whether or not that's true.

A. I actually do.  [Gergley], himself, thought it was hilarious.  He told us about something called Twittergate and said that the Ohio Republican Party, that he was covered in state-wide media, that he was covered in papers, \* \* \*

Q. Okay.  Now, you've never actually seen that Facebook post, have you?

A.  Yes, I have.

\* \* \*

A. I'm fairly certain that it was used in the advertising.  If not, there was a screenshot of it that was on social media.  And if not that, I know one of the witnesses have the original post that will be here tomorrow.

Tr. Vol I at 129 – 131.

{¶12} Ackison subsequently refuted calling Gergley "a date rapist," but admitted saying he passed out date rape drugs to women, explaining she "took the information from the Republican Party that he passed out known date rape drugs to women, yes * * * from their flyers that were mailed out throughout the state." *Id.* at 133-134.  When asked if she had any personal knowledge Gergley passed out date rape drugs to women, Acksion answered, "Only based on all of the television media, print media, and the Republican Party flyers." *Id.* at 134.

{¶13} When questioned about posts on her social media accounts stating Gergley was fired from her campaign, Ackison replied, "That [Gergley] was fired, yes. ** * Well, there was a campaign, it was Rebel Strategies, LLC, and it was dissolved and [Gergley] was fired and he was blocked from my phone, yes." *Id.* at 142.  Attorney Spyker asked: "So, now you're telling us here that when you posted on your Facebook and on other social media that [Gergley] was fired from the campaign, you were not referring to the campaign that he worked on for you but you were referring to an LLC?"  Ackison answered, "That's exactly what I'm telling you." *Id.*

{¶14} Ackison confirmed she stated Gergley had a well-documented history of abusing women.  When asked to name a single woman Gergley had a well-documented history of abusing, Ackison mentioned a woman named "Twinkle," who was running for office in Alabama.  Ackison explained Gergley harassed the woman through disguised social media accounts.  Ackison added she, herself, also had been the victim of Gergley's targeted social media harassment.  Attorney Spyker confronted Ackison with her answer

to the same question during her deposition: "I cannot give you a single name." *Id.* at 146. Ackison acknowledged Attorney Spyker accurately read her deposition response, but added "[a]fter seven hours of deposition and multiple breaks, yeah, you did." *Id.*

**{¶15}** Ackison asserted she "never told anybody publicly that Mr. Gergley gave marijuana to a small boy," but admitted she did say he was convicted of giving drugs and alcohol to children. *Id.* at 148.   When asked if she authored the following post about Gergley: "He's a racist stalker.  A very deep history of racism and predatory behavior with women.  Everyone know that it's him and his IP address has already been traced and tracked.  His cohorts have already sold him out," Ackison replied, "Yes.  He is a racist stalker." *Id.* at 259.  In response to a post authored by her husband: "Well documented history of stalking woman [sic] and deviant behaviors.  Lonely, lives with parents, stalks my wife, unkept," Ackison admitted she commented, "Predator." *Id.*

**{¶16}** Ackison testified her husband reported Gergley to the Insurance Board, alleging ethical violations.  Ackison stated she authored the following Facebook post: "Joe was in violation of multiple ethic rules and regulations through the Ohio Insurance Board and Commissioners are also aware of the situation.  Joe is extremely lonely, attention seeking, and has a very long history of troublesome behavior with woman." *Id.* at 262. In response to Attorney Spyker's question, "And you represented to the public that Joe was in violation of multiple ethic rules and regulations?", Ackison stated, "He is." *Id.*

**{¶17}** Ackison's cross-examination concluded with the following exchange:

>      Q. Fair to say you hate Mr. Gergley?

A. I don't hate anyone.  It's against my Christianity.  I'm not going to go to Mr. – go to hell for Joe Gergley.

Q. Okay.  As recently as Mr. Gergley's deposition, did you stand up and scream at him that he's a fat ass mother fucker?

A. No.  That was in deposition after seven hours and him laughing across the table and, yeah, I lost it.

Q. I asked if you did.

A. I did.

Q. Yes.

A. Not proud of it but certainly did

Q. You called him a sick fuck.

A. I do believe he is.

*Id.* at 264.

{¶18}  Gergley testified he owns and operates an insurance agency and a political consulting firm specializing in polling.  Gergley lives in Licking County, having moved to the area three or four years earlier.   Gergley grew up in the suburbs of Gahanna, Ohio, and attended Ohio State.  Gergley ran two unsuccessful bids for Gahanna City Council in 2011, and 2013.   In 2015, when he was 26 years old, Gergley ran for mayor of Gahanna. In 2017, Gergley ran for a position with the Republican Central Committee in Franklin County.  Gergley explained, although the position on the Central Committee is an elected one, it is not a public office.

{¶19} During his 2015 campaign for mayor, Gergley's opponent distributed attack ads accusing him "of things that were untrue." *Id.* at 275. One of the accusations declared Gergley, on his Facebook page, bragged about offering date rape drugs to women at his birthday party. The text on the mailers read: "Come out early and celebrate. Jello shots, kegs, and flunitrazepam for anyone who wants it. Gergley will be making liquid dope and you're gonna get drunkkkk. (Source: Joe Gergley Facebook Page, 5/17/09)." Gergley stated he never posted such "invitation" on his Facebook page, and he was able to determine who created the post. He noted, in 2015, the Columbus Dispatch reported on the incident, calling the mailer "insidious," but, like Gergley, could not determine who created the post. *Id.* at 281. Gergley acknowledged he had a 21st birthday party with his college friends in 2009, but denied ever having distributed or offering date rape drugs.

{¶20} When questioned about Ackison's allegation he provided alcohol and drugs to minors, Gergley explained, when he was in college, he attended a tailgate party with one of his friends and some of his friend's high school friends. The group was at the tailgate party for no more than 15 minutes when the police arrived and asked for everyone's identification. Gergley was cited for supplying alcohol and paid a fine.

{¶21} Gergley also addressed Ackison's allegation he attended a high school prom when he was an adult. Gergley stated he attended three proms, two his junior year of high school and one his senior year of high school. Years later, Gergley was visiting a girl he had taken to one of the proms. When Gergley was leaving, her younger brother was outside, smoking marijuana, and asked Gergley for a ride to his girlfriend's house. As soon as the two entered Gergley's vehicle, a police officer pulled up next to them. The officer advised Gergley he had pulled him over due to some thefts in the area. The officer

then asked if they had been smoking marijuana. Gergley responded, "No," but the brother responded he had been. Gergley gave the officer consent to search his vehicle. Following the search, the officer advised Gergley he was free to go.

{¶22} Gergley denied having a history of abusing women. He explained the woman, Twinkle, about whom Ackison accused him of abusing, was a friend of his business partner, Heather Sellers, and was running for Lieutenant Governor of Alabama. Twinkle's opponent ran a commercial about her, which Gergley found effective. Gergley sent the commercial to Ackison, commenting, "This is a good commercial. Heather's best friends with Twinkle but I think it's a pretty funny commercial." After his relationship with Ackison deteriorated, Ackison called Gergley's business partner and accused him of creating "crazy accounts" about Twinkle.

{¶23} Gergley indicated he has never been under investigation by any law enforcement agency. Gergley filed a police report against Ackison on August 4, 2019. He explained he did so after Ackison repeatedly contacted his business partner and clients in the middle of the night; sent him a "completely bogus" cease and desist letter; hired a private investigator who came to his home and accused him of threatening Ackison; and posted veiled threats on social media. Despite Ackison telling people she fired him from her campaign, Gergley testified he was not fired. He believed Ackison's actions have impacted his political consulting business. Gergley ceased operating his business in Ohio for a period of time, focusing on out-of-state races.

{¶24} At the close of Gergley's case-in-chief, Ackison moved for directed verdict. After allowing the parties to argue their respective positions, the trial court granted Ackison's motion and dismissed Gergley's counterclaims. The trial court did so based

upon its determination Gergley was a limited purpose public figure. The trial court further found Gergley did not prove Ackison acted with actual malice.

**{¶25}** Via Judgment Entry filed October 12, 2021, the trial court memorialized its decision granting Ackison's motion for directed verdict.

**{¶26}** It is from that judgment entry Gergley appeals in Licking App. No. 21CA00087, raising the following assignments of error:

I. THE TRIAL COURT PREJUDICIALLY ERRED WHEN IT DETERMINED MR. GERGLEY WAS A LIMITED PURPOSE PUBLIC FIGURE AS A MATTER OF LAW AND APPLIED THE ACTUAL MALICE STANDARD TO HIS DEFAMATION AND FALSE LIGHT CLAIMS.

II. THE TRIAL COURT PREJUDICIALLY ERRED WHEN IT DETERMINED MR. GERGLEY FAILED TO SHOW STATEMENTS MADE BY MS. ACKISON WERE MADE WITH ACTUAL MALICE.

III. THE TRIAL COURT PREJUDICIALLY ERRED WHEN IT DETERMINED MR. GERGLEY FAILED TO SHOW DAMAGES EITHER UNDER A DEFAMATION PER SE ANALYSIS OR UNDER AN ACTUAL INJURY ANALYSIS.

**{¶27}** In Licking App. No. 21CA00089, Ackison appeals the June 2, 2021 Decision and Order Granting Defendant's Motion for Summary Judgment, the June 3, 2021 Nunc Pro Tunc Decision and Order Granting Defendant's Motion for Summary Judgment, the

July 1, 2021 Judgment Entry, and the February 2, 2021 Order Granting Defendant's Motion for Fees and Costs, raising the following assignments of error:

I. THE TRIAL COURT ERRED AS DEFENDANT-APPELLEE IS NOT ENTITLED TO SUMMARY JUDGMENT UNDER CIV. R. 56(C) AS GENUINE ISSUES OF MATERIAL FACT EXIST AND PRECLUDED GRANTING SUMMARY JUDGMENT TO ANY PARTY.

II. TO THE EXTENT THAT DEFENDANT-APPELLEE IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES, THE FEES AWARDED MUST BE REDUCED.

III. THE COURT WAS NOT PRESENTED WITH EVIDENCE AS TO THE REASONABLENESS OR NECESSITY OF THE BILLED TIME, CONSTITUTING PLAIN ERROR.

**{¶28}** Although Ackison's Appeal was filed after Gergley's Appeal, we address Ackison's assignments of error first in order to respond to all of the issues in a chronological manner.

LICKING APP. NO. 21CA00089

I

**{¶29}** In her first assignment of error, Ackison contends the trial court erred in granting summary judgment in favor of Gergley as genuine issues of mater fact exist.

*Standard of Review*

**{¶30}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). As such, this Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

**{¶31}** Civ.R. 56 provides summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977).

**{¶32}** It is well established the party seeking summary judgment bears the burden of demonstrating no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1987). The standard for granting summary judgment is delineated in *Dresher v. Burt*, 75 Ohio St.3d 280 at 293, 662 N.E.2d 264 (1996): " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case.

Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150, 309 N.E.2d 924 (1974).

*Analysis*

**{¶33}** The determination of whether words are defamatory is a question of law, thus summary judgment is appropriate in defamation actions. *Heidel v. Amburgy*, 12th Dist. Warren No. CA2002-09-092, 2003-Ohio-3073, ¶ 11 (Citation omitted). In order to survive summary judgment in an action involving defamation, "the plaintiff must make a sufficient showing of the existence of every element essential to his or her case." *Id.*

**{¶34}** To establish defamation, the plaintiff must show (1) a false statement of fact was made, (2) that the statement was defamatory, (3) the statement was published, (4) the plaintiff suffered injury as a proximate result of the publication, and (5) the defendant acted with the requisite degree of fault in publishing the statement. *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 77, citing *Pollock v. Rashid,* 117 Ohio App.3d 361, 368, 690 N.E.2d 903 (1996). "Defamation can take the form of libel or slander. Libel refers to written or printed defamatory words and

slander generally refers to spoken defamatory words. *Matikas v. Univ. of Dayton*, 152 Ohio App.3d 514, 2003-Ohio-1852, 788 N.E.2d 1108, ¶ 27.

**{¶35}** "To establish defamation of a public figure, a complainant must also establish that the defendant acted with actual malice." *Lansky v. Brownlee*, 8th Dist. No. 105408, 2018-Ohio-3952, ¶ 23. Actual malice means that the statement was made "with knowledge of falsity or a reckless indifference to their truth." *Murray v. Chagrin Valley Publishing Co.*, 2014-Ohio-5442, 25 N.E.3d 1111, ¶ 30. Ackison concedes she is a public figure.

**{¶36}** During her deposition, Ackison claimed Gergley created a number of anonymous social media accounts, including "MAGA Brown," "Not Ohio GOP," and "Ohio Trump Train" on Twitter, and "Melissa Ackison Fake Conservative" on Facebook, which he used to harass and disparage her.

**{¶37}** Attorney Patrick Kasson, counsel for Gergley, asked Ackison, "as you sit here today, can you think of anything that was said on the MAGA Brown site that you believe was false?" Deposition of Melissa Ackison at 131. Ackison responded, "It was mostly just harassment materials, calling me names and being a nuisance every couple of hours. Or modifying photographs of me, face shots, head shots, stuff like that." *Id*. When asked if she could think of anything false Gergley said on the Not Ohio site, Ackison answered, "Absolutely. To call me – somebody who is credentialed as the most conservative politician in the state of Ohio by all credentialed organizations, both for my policy, my activism, my legislation I've worked on, activities, you cannot call me liberal or a fake conservative, there is no truth to that. There is no truth to that brand." *Id*. at 133.

Ackison added, "And telling everyone I was lying about my race. * * * putting together videos, telling people I was a white woman, I was not mixed, yeah." *Id.*

{¶38} The questioning of Ackison by Attorney Kasson continued:

Q. * * * Can you think of anything on the Not Ohio site that you think is false-

A. I think I just told you –

Q. Other than calling you a fake conservative –

A. Harming the brand, and telling people I was a secret liberal, had liberal viewpoints.  That I wasn't a conservative.  When, clearly, I'm rated as the most conservative across the state of Ohio next to Candice Keller.

*Id.* at 134.

Q. * * * The Not Ohio website, how do you know it was [Gergley]?

A. Because I'm confident it was [Gergley].  Again, he was putting up specific contents that was only conversations between he and Melissa Rozanski and I.  Just like he did on the many Twitter pages that he was running.

Q. And what specifically went up on the Not Ohio site that could have only come between you three?

A. Well, I can assure you he did it. * * *

*Id.* at 136.

Q. And the Ohio Trump Train, can you think of anything that was on that site that was false?

A. Most of the content on there was false. Everything from my mixed race background to Melissa Ackison is a fake conservative. When that is the furthest from the truth. I would have to go through and read them all.

Q. Sure, as we sit here today, these sites he was running, all of them, the only thing you can think of that you think is false is the accusation that you are a fake conservative, you are actually a liberal, and that you are not mixed race, correct?

A. Correct. Today.

*Id.* at 138-139.

Q. And you certainly understand that when you're running for office, that when people hold opinions about you, they are allowed to share them, correct?

A. I'm sorry, him just being in here is gross. I believe he gets a reward just being here.

Q. Sure. I get that. My question is, when people are running for public office, and people have opinions about you, they are allowed to share those, right?

A. Sure. What they are not allowed to do is establish a pattern of conduct where they operate multiple sites to tag and harass me on a daily basis. That's not what they are able to do.

Q. Why are they not allowed to on [sic] multiple sites make commentary, political commentary about you?

A. Because it's not always political commentary. A lot of times it would be things that are not at all politically-related, just constantly tagging me and harassing me, despite me blocking him, only to get a new one pop up. He's not in my district.

Q. So tell me what those comments that were made that were not political?

A. We will wait until trial.

Q. As we sit here today, can you tell me –

A. No, because I will just pull out all the stops.

Q. As we sit here today, can you tell me any comments made on these sites that were not politically-related?

A. They were all politically-related. Yeah, for the sake of today.

Q. Okay. Well, I mean, I want to know – not for the sake of today, I want to know as you sit here, can you think of any comments on all these websites –

A. Not that I recall.

Q. Let me finish. As we sit here today, can you think of any comments [Gergley] made about you on any of these websites that were not politically-related?

A. Not that I recall.

*Id.* at 144-146.

Q. Sure. All right. Of all the Internet postings, harassments, everything you think [Gergley] said about you * * * other than not being

mixed race, calling you liberal and calling you a fake conservative, can you think of anything else false [Gergley] has said about you?

A. Not of the top off my head, no. I would have to go back and reference.

*Id.* at 155-156.

Q. Other than the charges that were filed against you and published in the media, are you aware of any other media reports reporting false things as a result of something [Gergley] did.

A. No. Because my DNA determines who I am. And that was, you know, published by everyone who received the articles about me pretending to be black or mixed. I can't think, no.

*Id.* at 162.

**{¶39}** Ackison's deposition testimony makes clear she is unable to identify any false statements of fact made by Gergley, the first element of a defamation claim. Because Ackison failed to "make a sufficient showing of the existence of every element essential to . . . her case," *Heidel*, supra, we find her claims fail.

**{¶40}** In her Memorandum Contra to Defendant's Motion for Summary Judgment, Ackison attached her own Affidavit in order to create a genuine issue of material fact.

**{¶41}** "An affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat a motion for summary judgment." *Byrd v. Smith,* 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, paragraph three of the syllabus. "A

nonmoving party's contradictory affidavit must sufficiently explain the contradiction before a genuine issue of material fact is created." *Id.* at ¶ 29.

**{¶42}** In her affidavit, Ackison averred she was "making this affidavit to supplement the factual record of [her] case." Affidavit of Melissa Ackison at para. 1. We find the affidavit went beyond merely supplementing Ackison's deposition testimony.

**{¶43}** During her deposition, Ackison was given multiple opportunities to provide examples of Gergley's false statements. Ackison repeatedly referenced Gergley's accusations she was a fake conservative, was actually a liberal, and was not mixed race. In her affidavit, Ackison compiled 19 false statements and/or lies Gergley published about her in addition to his filing a false police report against her. Ackison's affidavit neither suggested she was confused at the deposition nor did she offer a reason for the contradiction to her prior deposition testimony; therefore, we find the affidavit could not create a genuine issue of material fact to defeat Gergley's motion for summary judgment. *Byrd*, supra at ¶ 28.

**{¶44}** Accordingly, we find Ackison's deposition was the only Civ. R. 56(C) quality evidence before the trial court in addressing Gergley's motion for summary judgment.

**{¶45}** Additionally, in her Brief to this Court, Ackison contends Gergely's filing a police report with the Licking County Sheriff's Office, alleging she was telephone harassing him, "was defamation, committed with actual malice." Brief of Ackison at 13. Ackison adds, "These reports were not true, were fabricated by Mr. Gergley, who deliberately ignored facts establishing the falsity of his statements * * * knew these claims would become public and her political opponent would be able to use this false report against Ms. Ackison in her political Ohio Senate campaign." *Id.* Ackison bases this

assertion on Gergley's deposition testimony in which he admitted he and Ackison stopped communicating in July or August, 2018, but did not contact the Licking County Sheriff's Office in August, 2019.

**{¶46}** Gergley's deposition was not available at the time the trial court reviewed and ruled upon Gergley's motion for summary judgment.  As such, this Court may not consider such evidence in determining if the trial court appropriately granted summary judgment. Appellate review is limited to the record as it existed at the time the trial court rendered its judgment. *Bay v. Brentlinger Enters.*, 10th Dist. No. 15AP-1156, 2016-Ohio-5115, ¶ 25, citing *Cunningham v. Cunningham,* 5th Dist. No. 09–CA–25, 2010 Ohio 1397, ¶ 65.

**{¶47}** As mentioned, supra, in his motion for summary judgment, Gergley argued Ackison's complaint failed as a matter of law because, inter alia, the statements made by Gergley upon which Ackison based her claims were opinion speech concerning an admittedly public figure protected by Section 11, Article I of the Ohio Constitution.  Ackison did not address this argument in her memorandum contra Gergley's summary judgment.  However, in her Brief to this Court, Ackison asserts Gergley's speech was not protected by the Ohio Constitution.

**{¶48}** As a general rule, a litigant who has the opportunity to raise an issue in the trial court, but declines to do so, waives the right to raise that issue on appeal. *The Strip Delaware, LLC v. Landry's Restaurants, Inc.,* 5th Dist. No. 2010CA00316, 2011–Ohio–4075, ¶ 41.  Because Ackison failed to make such argument to the trial court, this Court will not review this argument on appeal. *May v. Westfield Village L.P.,* 5th Dist. No. 02–

COA–051, 2003–Ohio–5023, ¶ 21, citing *Lippy v. Society Nat'l Bank,* 88 Ohio App.3d 33, 623 N.E.2d 108 (1993).

**{¶49}** Based upon the foregoing, we find the trial court did not err in granting summary judgment in favor of Gergley.

**{¶50}** Ackison's first assignment of error is overruled.

II, III

**{¶51}** We elect to address Ackison's second and third assignments of error together.  In her second assignment of error, Ackison submits, to the extent Gergley is entitled to an award of attorney fees, the amount of fees awarded should be reduced.  In her third assignment of error, Ackison asserts Gergley failed to present evidence of the reasonableness or necessity of the billed time.

**{¶52}** "Our review of a trial court's order granting sanctions for failing to comply with the discovery rules is based on an abuse-of-discretion standard. A trial court has broad discretion to fashion an appropriate sanction for a party's failure to comply with the discovery rules." *Yellowbook, Inc. v. L. Patrick Mulligan & Assocs.*, 2d Dist. Montgomery No. 26090, 2014-Ohio-4698, ¶ 7, citing *Nakoff v. Grandview Gen. Hosp.l,* 75 Ohio St.3d 254, 662 N.E.2d 1 (1996), syllabus. Unless the trial court's decision is arbitrary, unreasonable or unconscionable, the court has not abused its discretion. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "This is a 'highly deferential standard of review,' and 'we will not lightly substitute our interpretation for that of the issuing court.' " *Barton v. Barton*, 2017-Ohio-980, 86 N.E.3d 937, ¶ 98 (2d Dist.), citing *State ex rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d

179, ¶ 29. We find the trial court did not abuse its discretion in ordering Ackison to pay Gergley for her discovery violation.

**{¶53}** In *Bittner v. Tri-Cty. Toyota, Inc.*, 58 Ohio St.3d 143, 569 N.E.2d 464 (1991), the Ohio Supreme Court set forth a two-part test for determining what constitutes "reasonable" attorney fees. First, the trial court multiplies the number of hours reasonably expended by the attorney by a reasonable hourly rate. *Id.* at 145, 569 N.E.2d 464. This calculation provides "an initial estimate of the value of the lawyers' services." *State ex rel. Harris v. Rubino*, 156 Ohio St.3d 296, 2018-Ohio-5109, 126 N.E.3d 1068, ¶ 3. The trial court may then adjust the fee upward or downward based on the factors listed in Prof. Cond. R. 1.5(a). *Harris* at ¶ 3, citing *Bittner* at syllabus. Those factors include the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly, the amount involved and the results obtained, the experience, reputation, and ability of the lawyer or lawyers performing the services, and whether the fee is fixed or contingent. *Ohio Valley Associated Bldrs. & Contrs. v. Rapier Elec., Inc.*, 12th Dist. Butler Nos. CA2013-07-110 and CA2013-07-121, 2014-Ohio-1477, ¶ 59.

**{¶54}** The party seeking an award of attorney fees bears the burden of demonstrating the reasonableness of the requested fees. *Nordquist v. Schwartz*, 7th Dist. Columbiana No. 11 CO 21, 2012-Ohio-4571, ¶ 22, citing *Unick v. Pro-Cision, Inc.*, 7th Dist. Mahoning No. 09MA171, 2011-Ohio-1342, ¶ 28-29. Evidence of reasonableness "may take the form of testimony, affidavits, answers or other forms of sworn evidence. As long as sufficient evidence is presented to allow the trial court to arrive at a reasonable attorney fee award, the amount of the award will not be disturbed absent an abuse of

discretion." *R.C.H. Co. v. 3–J Machining Serv.,* 8th Dist. Cuyahoga No. 82671, 2004–Ohio–57, ¶ 25.

**{¶55}** Ackison argues, "[Gergley] sought attorney fees for fairly routine items. Many of the hours sought in recovery of the attorney fees are the nearly constant follow up emails and correspondence.  The hourly rate sought by [Gergley] conflate the skill necessary to litigate this matter with significantly more difficult matters.  While [Ackison] is cognizant that a reasonable number of hours are expected for each of the above, [counsel's] travel time was a large portion of the billed fees.  At a minimum, attorney time spent travelling should be deeply discounted." Brief of Plaintiff-Appellant, Melissa Ackison at 19.  We disagree.

**{¶56}** At the January 27, 2021 hearing on Gergley's motion for attorney fees, Attorney Patrick Kasson, counsel for Gergley, presented the trial court with a copy of his billing statement. Attorney Kasson explained the time was entered contemporaneously into his firm's billing system by the individual who performed the work.  Attorney Kasson indicated his estimated his travel time to and from the hearing as a half an hour and added that entry to the end of the bill.  Attorney Rocky Ratliff, counsel for Ackison, cross-examined Attorney Kasson.  The only fees Attorney Ratliff questioned was the time Attorney Kasson personally spent drafting/preparing the motion to compel (.5 hours) as well as his travel time to that day's hearing (.5 hours).

**{¶57}** Upon review of the transcript of the hearing, we find the trial court did not abuse its discretion in awarding $912.50, in attorney fees.  We find the amount of fees requested and awarded was commensurate to the work performed.  Gergley was entitled to recover the attorney fees incurred in attempting to obtain the requested discovery from

Ackison, including correspondences, motion drafting and preparation, and any necessary travel time associated therewith. The fact Attorney Kasson performed work rather than having his paralegal do so, as Ackison seems to suggest, does not render the fees incurred unreasonable. We further find, based upon Attorney Kasson's testimony, the attorney fees were reasonable.

**{¶58}** Accordingly, Ackison's second and third assignments of error are overruled.

LICKING APP. NO. 21CA0087

I

**{¶59}** In his first assignment of error, Gergley maintains the trial court erred in finding him a limited purpose public figure as a matter of law and applying the actual malice standard to his counterclaims. We agree.

**{¶60}** There are four classifications into which a plaintiff alleging defamation may fall: (1) a private person; (2) a public official; (3) a public figure; and (4) a limited-purpose public figure. *Daubenmire v. Sommers,* 156 Ohio App.3d 322, 805 N.E.2d 571, 2004–Ohio–914, ¶ 87. Classification determines the plaintiff's burden of proof. *Id.* The determination of whether a party is a private or public figure is a matter of law. *Id.* at ¶ 88.

**{¶61}** A limited-purpose public figure is a person who becomes a public figure for a specific range of issues by being drawn into or voluntarily injecting himself into a specific public controversy, *Id.* at ¶ 89, and/or by "thrust[ing] themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *E. Canton Edn. Assn. v. McIntosh,* 85 Ohio St.3d 465, 482, 709 N.E.2d 468, 1999–Ohio–282. "Whether a person is a limited purpose public figure is determined by examining that person's participation in the controversy from which the alleged defamation arose,

and whether he has attained a general notoriety in the community by reason of that participation." *Talley v. WHIO TV–7,* 131 Ohio App.3d 164, 170, 722 N.E.2d 103 (2d Dist. 1998).

**{¶62}** A plaintiff does not become a limited-purpose public figure because the allegedly defamatory statements create a controversy; the controversy must have existed prior to the statements. *Fuchs v. Scripps Howard Broadcasting Co.,* 170 Ohio App.3d 679, 868 N.E.2d 1024, 2006–Ohio–5349, ¶ 11. "A public controversy is a dispute that in fact has received public attention because its outcome will affect the public or some segment of it in an appreciable way." *Scaccia v. Dayton Newspapers, Inc.,* 170 Ohio App.3d 471, 2007-Ohio-869, 867 N.E.2d 874, ¶ 33 (2d Dist.), citing *Waldbaum v. Fairchild Publications, Inc.* (C.A.D.C.1980), 627 F.2d 1287. "Essentially private concerns or disagreements do not become public controversies solely because members of the public find them appealing to their morbid or prurient curiosity." *Id.* (Citation omitted).

**{¶63}** In ruling from the bench, the trial court found:

[A]s a matter of law, that Mr. Gergley is at a minimum a limited public figure based upon his prior history of running for public office and the information that was broadcast to the public and reiterated, republished several times as Mr. Ratliff's [counsel for Ackison] cross-examination demonstrated this morning. Various newspaper articles. There was the GOP hit piece that came out from the Republican Party. He's voluntarily – voluntarily run for public office * * * Four years ago and he said to himself, you know I'm never doing that again. That doesn't shut the door on whether

or not you're a public figure, not official, public figure.  And in this case he's

engaging in politics at the street level.  I mean, this is – what's the term for

it – cut throat politics.  I don't know.  It's nasty business.  That's a voluntary

decision. * * * I don't frankly see how I could come to the conclusion that he

is not a limited public figure for purposes of these claims.

> Tr., Vol. II, at 477-478.

{¶64}   "The proper focus of this inquiry, however, is on the controversy from which

the alleged defamation arose."  *Gibson Bros., Inc. v. Oberlin College*, 9th Dist. Lorain App.

Nos. 19CA011563 and 20CA011632, 2022-Ohio-1079, ¶61.  We find the controversy

from which the alleged defamation arose was Ackison's posting statements, comments,

etc. on Twitter, Facebook, and other social media platforms.  The controversy did not

exist prior to her posts.  The fact Gergley ran for public office on several occasions in the

past does not support the trial court's conclusion he was a limited purpose public figure

in this specific dispute.  An individual who ran or runs for public office at some point in his

or her life does not, in all instances, remain a public figure, limited or otherwise, in

perpetuity.   The newspaper articles and opposition attack ads relative to Gergley's

campaign for mayor of the City of Gahanna in 2015, although discoverable via an Internet

search, did not create the public controversy herein.

{¶65}  Based upon the foregoing, we find the trial court erred in finding Gergley a

limited purpose public figure

{¶66}  Gergley's first assignment of error is sustained.

II, III

{¶67} In light of our disposition of Gergley's first assignment of error, we find his second and third assignments of error to be premature.

{¶68} The judgment of the Licking County Court of Common Pleas in Licking App. No. 21CA0089 is affirmed.  The judgment of the Licking County Court of Common Pleas in Licking App. No. 21CA0087 is reversed and the matter remanded for further proceedings consistent with this Opinion and the law.


By: Hoffman, J.
Wise, Earle, P.J.  and
Delaney, J. concur

HON. WILLIAM B. HOFFMAN

HON. EARLE E. WISE, JR.

HON. PATRICIA A. DELANEY