[Cite as *Ackison v. Gergley*, 2025-Ohio-1112.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MELISSA ACKISON | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellant | : | Hon. William B. Hoffman, J. |
| | : | Hon. David M. Gormley, J. |
| -vs- | : | |
| | : | |
| JOSEPH GERGLEY | : | Case No. 2024 CA 00036 |
| | : | |
| Defendant - Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Court of Common
Pleas of Licking County,
Case No. 2019 CV 1082

JUDGMENT:    Affirmed

DATE OF JUDGMENT:    March 28, 2025

APPEARANCES:

For Plaintiff-Appellant

J.C. Ratliff
Nicholas A. Barons
200 West Center Street
Marion, Ohio 43302

For Defendant-Appellee

Thomas N. Spyker
Mrinali Sethi
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215

*Gormley, J.*

{¶1} This dispute — which involves the interesting interplay between the tort of defamation and the First Amendment's freedom-of-speech protection — is here for a second time. Three years ago, our court overturned the trial court's decision dismissing a defamation claim, and we sent the case back for a new trial. That second trial has now been held, and the case is here again. Because we conclude that the trial judge in the second trial properly instructed the jury on the defamation claim at issue, and because we also find that the jury's verdict in favor of the defamation plaintiff was supported by the weight of the evidence and that an award of attorney's fees in his favor was proper, we now affirm.

## Facts and Procedural History

{¶2} This case was previously before this court on appeals from both parties. *See Ackison v. Gergley*, 2022-Ohio-3490 (5th Dist.) ("*Ackison 1*"). At the time of the first appeal, defendant Joseph Gergley owned and operated a small political consulting firm, which specialized in public polling. In early 2018, plaintiff Melissa Ackison ran for a seat in the U.S. Senate, and she hired Gergley to provide consulting services for that campaign. Ackison lost a contested primary election in her race in May 2018. After her campaign ended that year, Ackison and Gergley discussed working together on other ventures. Their business relationship soured, however, in July or August of 2018, and they did not work together after that time.

{¶3} In late 2019, Ackison filed a complaint against Gergley in Licking County, and Gergley in turn filed a counterclaim against her. Gergley sought summary judgment in his favor on Ackison's claims against him, and the trial court granted that request. A

jury trial was then held on Gergley's counterclaim in which he alleged defamation, defamation by innuendo, slander, slander per se, libel, libel per se, and false-light invasion of privacy. At the close of Gergley's case-in-chief, the trial court granted a directed verdict in Ackison's favor, finding that Gergley was a limited-purpose public figure and that he had failed to prove that Ackison had acted with actual malice.

{¶4} On appeal, this court found that the trial court did not err in granting summary judgment in favor of Gergley on Ackison's complaint. This court also found, however, that the trial court erred in viewing Gergley as a limited-purpose public figure. We reversed the judgment, and we remanded the case for a new trial.

{¶5} A second jury trial on Gergley's counterclaim was held in October 2023. The jury in that trial ruled in favor of Gergley and awarded compensatory damages to him of $25,000. Finding that Ackison acted with actual malice, the jury also concluded that Ackison should pay punitive damages totaling $15,000. The jury determined, too, that Ackison should pay Gergley's attorney's fees in the case.

{¶6} Following a hearing on Gergley's application for attorney's fees and expenses, the trial court awarded attorney fees to him of roughly $85,000 as well as expenses totaling more than $7,000. Ackison now appeals.

## Gergley Was Properly Characterized as a Private Citizen Rather Than as a Limited-Purpose Public Figure

{¶7} Ackison contends first that Gergley ought to have been viewed as a limited-purpose public figure in the second trial and that Gergley therefore should have been required to prove actual malice on Ackison's part in order for Gergley to recover any damages on his defamation counterclaim. We disagree.

**{¶8}** This was of course an issue that we addressed three years ago in the first appeal. As we explained then, a limited-purpose public figure "is a person who becomes a public figure for a specific range of issues by being drawn into or voluntarily injecting himself into a specific public controversy" or by thrusting himself to the forefront of particular public controversies "in order to influence the resolution of the issues involved." *Ackison 1*, 2022-Ohio-3490, at ¶ 61 (5th Dist.). And a "public controversy," we explained, "is a dispute that in fact has received public attention because its outcome will affect the public or some segment of it in an appreciable way." *Id.* at ¶ 62. Notably, too, a party alleging that he or she has been harmed by allegedly defamatory statements does not become a limited-purpose public figure simply by virtue of the fact that "the allegedly defamatory statements create a controversy." *Id.* Instead, "the controversy must have existed prior to the statements." *Id.*

**{¶9}** The statements by Ackison that Gergley claims were defamatory were postings and comments about Gergley that Ackison placed on Twitter, Facebook, and other social-media platforms. After examining the facts that had been presented during the first trial, we concluded in the first appeal that in fact no "public controversy" existed before Ackison posted her comments on the various online platforms. The comments themselves certainly drew some public attention, but the absence of any prior public controversy was fatal, we explained, to any argument by Ackison that Gergley was a limited-purpose public figure when Ackison's online postings appeared. *Id.* at ¶ 64.

**{¶10}** No evidence presented during the second trial causes us to change our views about that issue. As in the first trial, no evidence in the record from the second trial

points to any "public controversy" that existed before Ackison's own statements about Gergley drew some public attention.

**{¶11}** In our decision resolving the first appeal three years ago, we thoroughly discussed the evidence presented during the first trial, and we marched through the key First Amendment and defamation cases in which the concept of a limited-purpose public figure has been addressed.  We see no need to repeat that information here.  Suffice to say that the trial judge in the second trial saw no reason to second-guess our earlier conclusion that Gergley was not a limited-purpose public figure when Ackison posted online comments about him, and we likewise see no reason now to ourselves revisit that conclusion.

**{¶12}** Ackison argues, however, that the public controversy here is not — as we concluded in *Ackison 1* — her social-media posts.  She claims, instead, that the public controversy at issue was her campaign for Ohio Senate that began in 2019 and continued until April 2020 when she lost a primary election.  She claims that Gergley involved himself in that campaign by using his social-media presence to undermine her candidacy and influence the outcome of the election.  In her view, Gergley became a limited-purpose public figure because his involvement in that campaign was an injection into a preexisting public controversy.

**{¶13}** We are unpersuaded by Ackison's view.  To be sure, Ackison herself was a public figure at the time of the alleged defamation by virtue of her having sought an Ohio Senate seat.  Gergley's alleged involvement in that campaign, however, was anonymous. *See Ackison 1*, 2022-Ohio-3490, at ¶ 36 (5th Dist.).  Throughout the second trial, Ackison pointed to examples of what she interpreted to be Gergley's interference in her state-

senate campaign.  She alleged that Gergley operated 42 different Facebook accounts to post various negative comments about her, that he spoke negatively about her with several individuals involved in her campaign, and that he filed a police report against her.

{¶14} Gergley was described in witness testimony at the second trial as a "sophisticated stalker" who was "high tech" and "good at using" computers.  Gergley was purportedly using fake names and "false IPs" to disguise his identity when making comments about Ackison online.  Ackison herself hired a private investigator to uncover who was creating the online posts, and that private investigator, as part of his investigation, confronted Gergley at his home.  To the extent that the public saw these negative Facebook comments, those readers had no way of knowing that the comments had allegedly come from Gergley.

{¶15} Gergley, as a result, never attained some renown among the public by reason of anything that he allegedly said on Facebook during Ackison's state-senate campaign.  Because any notoriety that was generated by the Facebook comments could not be attributed to Gergley by the public, he cannot rightly be characterized as a limited-purpose public figure.  *See Talley v. WHIO TV-7*, 131 Ohio App.3d 164, 170 (2d Dist. 1998) (explaining that a limited-purpose public figure must have "attained a general notoriety in the community" as a result of his or her participation in the public controversy); *Dameron v. Washington Magazine, Inc.*, 779 F.2d 736, 741 (D.C.Cir. 1985) (a person properly characterized as a limited-purpose public figure must have "played a sufficiently central role" in the public controversy).

{¶16} Gergley's police report also does not lead us to conclude that he injected himself into a public controversy.  That report was filed by Gergley in August 2019,

approximately two weeks after Ackison's private investigator confronted him at his home. Ackison and Gergley had not had direct contact with one another for approximately 11 months at the time the report was filed, but Gergley believed that Ackison was harassing and menacing him because of her action in sending a private investigator to his home. Gergley spoke with the police about his concerns but took no other steps to draw the public's attention to them. We do not view Gergley's limited contact with the police as the kind of act that could have turned him into a limited-purpose public figure. *See Croce v. Sanders*, 459 F.Supp.3d 997, 1016 (S.D.Ohio 2020) (cancer researcher was not a limited-purpose public figure where he spoke to the staff of scientific journals but did not "defend himself to a larger audience").

{¶17} We note, too, that we find Gergley's trial testimony about his conversations with people involved in or related to Ackison's state-senate campaign to be innocuous. Gergley confirmed that he spoke with several people throughout 2019 and 2020 who knew or worked with Ackison in some manner. Ackison did not, however, introduce evidence related to what those conversations were about. Gergley himself testified that most of those conversations occurred *after* he was sued by Ackison. We cannot conclude, without more, that Gergley injected himself into a public controversy by having those conversations.

{¶18} The trial judge at the second trial properly treated Gergley as a private citizen rather than as a limited-purpose public figure, and the jury was correctly instructed that Gergley, to prove his defamation claim, had to show that Ackison acted at least negligently in making any false statements about him. Gergley was not required — at the liability and compensatory-damages phases of the trial — to prove that Ackison acted

with actual malice, which would of course have imposed on Gergley an obligation to prove that Ackison made her allegedly defamatory statements with knowledge of their falsity or with a reckless indifference to their truth. *Ackison 1*, 2022-Ohio-3490 at ¶ 35 (5th Dist.).

**{¶19}** Our review of the record taken at the second trial finds no new evidence indicating that Gergley was a limited-purpose public figure. We decline to depart from our holding in *Ackison 1*. Ackison's first assignment of error is overruled.

## The Jury's Verdicts Were Not Against the Manifest Weight of the Evidence

**{¶20}** Having concluded that Gergley was not a limited-purpose public figure at the time Ackison posted online comments about him, we must now determine whether the jury's verdict was proper. Though Gergley was not a public figure or a limited-purpose public figure, he nonetheless was, in order to recover punitive damages, required to prove that Ackison's defamatory statements were made with actual malice. At the second trial, the jury found that Ackison did in fact act with actual malice, and Ackison does not dispute the jury's finding on that issue. Rather, she argues that the jury's verdict was against the manifest weight of the evidence because her statements were truthful. We disagree.

**{¶21}** In determining whether a verdict is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). The *Thompkins*

manifest-weight-of-the-evidence standard applies in civil cases when a manifest-weight-of-the-evidence challenge is raised. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 17.

{¶22} "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *State v. Butler*, 2024-Ohio-4651, ¶ 75 (5th Dist.). "'The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the [trier of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" (Bracketed text in original.) *State v. Williams*, 2024-Ohio-5578, ¶ 61 (5th Dist.), quoting *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80 (1984). "[A]n appellate court will leave the issues of weight and credibility of the evidence to the factfinder, as long as a rational basis exists in the record for its decision." *State v. Sheppard*, 2025-Ohio-161, ¶ 66 (5th Dist.). "The power to reverse a judgment as against the manifest weight must be exercised with caution and only in the rare case where the evidence weighs heavily against" the jury's verdict. *State v. Blankenship*, 2023-Ohio-2162, ¶ 25 (5th Dist.).

{¶23} As we noted in *Ackison 1*, a defamation plaintiff must show that any allegedly defamatory statements were false. 2022-Ohio-3490, at ¶ 34 (5th Dist.). A defendant in a defamation case may "'completely defend' a defamation action 'by showing that the gist, or imputation, of the [defamatory] statement is substantially true, and hence, the statement is not false.'" (Bracketed text in original.) *Swoope v. Osagie*, 2016-Ohio-8046, ¶ 33 (8th Dist.), quoting *Sweitzer v. Outlet Communications, Inc.*, 133 Ohio App.3d 102, 110 (10th Dist. 1999). Whether a statement is a false statement of fact is viewed under "an objective, reasonable-reader standard." *McKimm v. Ohio Elections Comm.*, 89

Ohio St.3d 139, 144 (2000). "If the law were otherwise, publishers of false statements of fact could routinely escape liability for their harmful and false assertions simply by advancing a harmless, subjective interpretation of those statements." *Id.* at 145.

{¶24} Throughout the second trial, Gergley pointed to six allegedly defamatory statements made by Ackison. These were: (1) Ackison's statement that she had fired Gergley from her 2018 campaign for U.S. Senate; (2) her statement that Gergley pays a woman — his wife — to live with him; (3) her statement that Gergley gave drugs and alcohol to little kids; (4) her statement that Gergley gave out date-rape drugs to women; (5) her statement that Gergley was facing an impending criminal conviction on felony charges; and (6) her statement that Gergley was being investigated by the Ohio Department of Insurance for violations of multiple ethical rules. Ackison does not dispute that she made these statements.

{¶25} At the conclusion of the second trial, the jury was instructed that "a statement is false if it is not substantially true. It is substantially true when the gist of the statement is true or is justified by the facts taking the statements as a whole." In its verdict, the jury concluded that "Miss Ackison's statements were substantially false."

{¶26} The jury had a rational basis to conclude that Ackison's statements were false. When she was cross-examined about her first statement, Ackison's own testimony confirmed that she never fired Gergley from her campaign for U.S. Senate. She was asked: "can we agree you never fired [Gergley] from the 2018 U.S. Senate campaign -- we can agree with that, right?" Ackison responded: "That's correct . . . He was not fired from the 2018 campaign."

{¶27} Credible testimony was introduced that allowed the jury to conclude that the second statement, too, was false. Gergley's wife, Halle Jackey, testified that she and Gergley have lived together since 2015 and that Gergley had never paid her to live with him. Gergley's own testimony earlier in the trial also corroborated Jackey's description of their relationship.

{¶28} Regarding the third statement, Gergley admitted that he was previously convicted on a misdemeanor charge of providing alcohol to an underage person. Gergley's testimony about that conviction, however, would cause an objective, reasonable reader to conclude that Ackison's statement that Gergley gave drugs and alcohol to little kids was false. Gergley testified that, when he was 21 years old, he attended a country-music concert with several of his friends. Before the concert started, Gergley and his friends played beer pong at a tailgate party in the parking lot of the stadium where the concert was held. A plain-clothes officer approached the group and asked them to show him their IDs. The officer discovered that one of the friends at the tailgate party was only 18 years old, and the officer wrote citations for providing alcohol to an underage person to everyone in the group. The weight of Gergley's testimony on this point allowed the jury to conclude, using its reason and common sense, that Ackison's statement was false because an objective and reasonable reader or listener would be unlikely to connect the phrase "little kid" to an 18-year-old at a tailgate party.

{¶29} The weight of the evidence also allowed the jury to conclude that the fourth statement was false. The claim that Gergley handed out date-rape drugs had been publicized in an advertisement by an earlier political opponent of Gergley's during Gergley's 2015 mayoral campaign in Gahanna, Ohio. That advertisement depicted an

alleged Facebook post from 2009 inviting people to Gergley's 21st birthday party. The alleged post stated that Gergley would be providing Jello shots, kegs, and date-rape drugs to anyone who wanted them. Ackison republished that 2015 advertisement after her relationship with Gergley soured. Gergley testified that he never wrote the Facebook post, and he denied ever handing out date-rape drugs at any point in his life. He emphasized that, because the post appeared to be written in the third person, it was probably written by an acquaintance of his when he was in college.

{¶30} As for the fifth statement — the one about a looming felony conviction — the jury had a rational basis for concluding that it was false. Gergley testified that he had never been charged with any felonies and had never been arrested by a law-enforcement officer. When cross-examined about her statements, Ackison was asked whether she had any "knowledge [of] any actual government agency -- or law enforcement agency investigating Mr. Gergley and preparing felony charges[.]" She replied that she did not.

{¶31} The jury, likewise, heard evidence that could rationally support a finding that the sixth statement was false. That statement — about Gergley being investigated for ethical violations — was one that Ackison made after (according to Ackison herself) her husband filed a complaint against Gergley with the Ohio Department of Insurance. Mr. Ackison filed that complaint, Ackison claimed, because of an alleged conversation with his insurance agent, Dean Cook, who allegedly informed Mr. Ackison that Gergley was violating insurance-industry rules.

{¶32} On rebuttal, towards the end of the five-day second trial, Gergley reached out to Dean Cook via text and asked him: "Hi Dean, this is Joe Gergley. I'm an insurance agent in Licking County. I'm in a lawsuit against Melissa Ackison and today in court her

husband testified that you two spoke about me two or three years ago and encouraged him to file a complaint with the Ohio Insurance Board.  Is this true[?]"  Dean Cook responded: "Dean Cook here.  I have no idea what this case is about.  I have not spoken with either party about this case.  I would not send anyone to department of insurance."  The trial court admitted these text messages into evidence over Ackison's objection. Gergley, in addition, testified that he had never been informed that he was being investigated by the Ohio Department of Insurance.  From this evidence, the jury could rationally conclude that the alleged investigation was a fabrication and that Ackison's sixth statement was thus false.

**{¶33}** Mindful of the presumption in favor of the jury's verdict, we find that a rational basis exists in the record for the jury's conclusion that Ackison's six statements were false. Consistent and credible evidence was introduced to support Gergley's position and to discredit Ackison's position.  Nothing in the record indicates to us that this is one of the rare cases where the evidence weighs heavily against the jury's verdict.

**{¶34}**  Even so, Ackison argues that the jury's verdict was still against the manifest weight of the evidence because Gergley did not demonstrate that he was harmed by her statements.  We disagree.

**{¶35}**  "Actionable defamation falls into one of two categories: defamation *per se* or defamation *per quod*." *Sky v. Van Der Westhuizen*, 2019-Ohio-1960, ¶ 57 (5th Dist.). "Defamation per se occurs when material is defamatory on its face[.]" *Al-Aroud v. McCoy*, 2021-Ohio-3832, ¶ 19 (5th Dist.), quoting *Gosden v. Louis*, 116 Ohio App.3d 195, 206-207 (9th Dist. 1996)  "Written matter is [defamatory] per se if, on its face, it reflects upon a person's character in a manner that will cause him to be ridiculed, hated, or held in

contempt; or in a manner that will injure him in his trade or profession." (Bracketed text in original.) *Id.* When statements are defamatory per se, the plaintiff may recover damages without pleading or proving special damages. *Sky* at ¶ 58.

**{¶36}** The statements made by Ackison were defamatory per se. The false statements that Gergley was fired by Ackison and that Gergley was being investigated by the Ohio Department of Insurance reflect on Gergley in a way that would injure his professional reputation. *See Knowles v. Ohio State Univ.*, 2002-Ohio-6962, ¶ 25–26 (10th Dist.) (false statement that an employee was fired from his previous position was defamation per se); *Grenga v. Vantell*, 2016-Ohio-4804, ¶ 35–36 (7th Dist.) (filing a false complaint with Ohio Department of Commerce was defamation per se).

**{¶37}** In addition, the statements that Gergley paid his wife to live with him, that he gave drugs and alcohol to little kids, that he gave out date-rape drugs, and that he was facing an imminent felony conviction would tend to subject Gergley to ridicule, hatred, and contempt. *See Holtrey v. Wiedeman*, 2023-Ohio-2440, ¶ 24 (12th Dist.) (statements accusing someone of criminal offenses are defamation per se); *Williams v. Gannett Satellite Information Network, Inc.*, 2005-Ohio-4141, ¶ 10 (1st Dist.) (statements need "only to *tend* to injure" the plaintiff in order to be defamation per se). (Emphasis in original.)

**{¶38}** We note that, in addition to the presumption of damages, Gergley testified throughout the second trial to the actual economic harm that Ackison's statements had on his businesses.

**{¶39}** Ackison's statements about Gergley could reasonably be viewed as untrue, they were defamatory per se, and Gergley in any event introduced evidence of the actual harm caused by those statements. Ackison's second assignment of error is overruled.

**The Trial Court Did Not Abuse Its Discretion in Awarding Attorney's Fees to Gergley**

**{¶40}** In her final assignment of error, Ackison argues that the trial court abused its discretion in setting the amount of attorney's fees owed by her to Gergley. We disagree.

**{¶41}** An appellate court reviews the trial court's award of attorney's fees for an abuse of discretion. *Gilson v. Am. Inst. of Alternative Medicine*, 2016-Ohio-1324, ¶ 115 (10th Dist.). An abuse of discretion exists when "the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment." *Sky*, 2019-Ohio-1960, at ¶ 71 (5th Dist.).

**{¶42}** Ohio generally follows the "American rule" on attorney's fees, which provides that each party must pay its own attorney's fees regardless of the outcome of the case. *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 2020-Ohio-1056, ¶ 9. "An exception to this rule exists where punitive damages are awarded in tort cases involving fraud, insult, or malice." *Gilson* at ¶ 116. When attorney's fees are recoverable, Ohio courts follow the "lodestar" approach to calculate the correct amount. *Phoenix Lighting* at ¶ 19. Under that approach, the court takes the reasonable hourly rate of the attorney and multiplies it by the number of hours worked. *Id.*

**{¶43}** In this case, the jury concluded that Ackison acted with actual malice and that Gergley was entitled to be awarded attorney's fees. The trial court conducted a fee hearing after the trial to determine the amount that Gergley was entitled to recover. At that hearing, attorneys Patrick Kasson and Thomas Spyker, both of whom were employed by Gergley as his trial counsel, testified as to the reasonableness of their fees and the number of hours that their firm worked on the matter. The attorneys also provided

complete copies of their billing records starting from their first consultation with Gergley and continuing through their preparations for the post-trial fee hearing.

**{¶44}** Nothing in the record indicates to us that Gergley's attorney's fees were unreasonable or excessive. We conclude, therefore, that the trial court did not abuse its discretion in its calculation of those fees. Ackison's final assignment of error is overruled.

**{¶45}** For the reasons explained above, we affirm the trial court's judgment.


By: Gormley, J.

Baldwin, P.J. and

Hoffman, J. concur.